UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON D. FISHER,

                Plaintiff,

-against-                                                              21-CV-7784 (LTS)

FAITH MILLER SCHEINKMAN, et al.,                ORDER OF DISMISSAL

                Defendants.

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is appearing *pro se*, brings this action under the civil provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), alleging that Defendants violated several federal criminal statutes, defrauded Plaintiff during his family law proceedings in Westchester County, and stole his intellectual property. Plaintiff originally filed this action in the United States District Court for the Eastern District of Michigan. *See Fisher v. Scheinkman*, No. 21-CV-11600 (E.D. Mich. Sept. 9, 2021). That court granted Plaintiff's application to proceed *in forma pauperis* ("IFP") and transferred the matter to this District because the events giving rise to Plaintiff's claims occurred within the Southern District of New York.

      For the following reasons, the Court dismisses the complaint, with 30 days' leave to replead.

## STANDARD OF REVIEW

      The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While

the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## BACKGROUND

This action arises out of Plaintiff's ongoing family law proceedings in the New York State Supreme Court, Westchester County. *See Fisher v. Fisher*, No. 58301/2018 (N.Y. Sup. Ct. Westchester Cty., filed July 2, 2018). Plaintiff names as Defendants: (1) his former wife, Jennifer Lighter ("Lighter"), and her parents, Gary and Jessica Lighter; (2) Lighter's lawyers, Faith Miller Scheinkman ("Scheinkman"), Jennifer Jackman, and Tiffany Gallo, and their law firm, Miller Zeiderman & Widerekehr LLP; and (3) another lawyer involved in the family court matter, Joanne Cambareri, and her law firm, Guttridge & Cambareri, PC. Plaintiff contends that Defendants participated in two enterprises – referred to by Plaintiff as Enterprise I and Enterprise II (the "Enterprises") – with the purpose of defrauding him and stealing his intellectual property.

The following allegations are taken from the complaint. Plaintiff, who is the "CEO of Mico Bio," a corporation that "specializes in the development of aerosolized vaccines," alleges that Defendants have stolen his intellectual property. (ECF 1, at 11.) He generally asserts that

> [s]ince approximately 2016 through to the present, persons controlling or directing the affairs of Enterprises I and II engaged in and joined in a conspiracy to intentionally, recklessly and/or negligently conceal criminal conduct of its agents, … coerce and/or extort the Plaintiff in order to keep its civil and criminal misconduct secret, violate the civil rights of children and the Plaintiff, engage in mail fraud, engage illegally in eavesdropping to advance the conspiracy, manipulate the Enterprise to deprive the rights of the Plaintiff to file grievances with the Government, retaliate against witnesses and informants and engage in theft and dissemination of corporate secrets of a biotechnology C corporation.
>
> The persons controlling or directing the affairs of Enterprises I and II knew the Defendants were breaking a multitude of laws and they showed willful indifference and/or reckless or intentional disregard for the Plaintiff, the C Corporation, and the

      Plaintiff's children in order to further their scheme.

(*Id.* at 16.) His specific allegations, however, concern his family court proceedings:

> Enterprise I would give access to the children to non custodians instead of the Plaintiff. Members of Enterprise I presented an ultimatum to the Plaintiff that if he did not consent to allow a trip with Defendants Gary Lighter and Jessica Lighter (non-custodians), the Plaintiff would later be viewed as an unfit parent by the Enterprise. This trip was endorsed by the Defendants and Enterprise despite evidence of active denigration of the Plaintiff by Defendants in question to the children. This trip further conflicted significantly with the Court Ordered parental time of the Plaintiff with his children. Since the event occurred, the Plaintiff has never been able to make up for the repeated violations of the Court Orders and the Court has since only created more threats and obstacles to Plaintiff's seeing his children. In other instances, the Plaintiff was subjected to arbitrary and unilateral decisions by the Defendants and the Enterprise that forced the Plaintiff to not see his children. In these situations, the Plaintiff was then penalized for not seeing his children during these occasions and the Court/Enterprise would then make negative statements on the record regarding the Plaintiff which included statements about his ability to parent. In other instances, the Defendants defied Court Stipulations and parental rights by scheduling events for the Plaintiff's children that would last weeks and sometimes months where the Plaintiff could not see his children. These decisions were not known by the Plaintiff nor was he consulted until the decision had already been made. Thus, the Defendant with the full support of the Enterprise defied custody laws. The Enterprise acknowledged the defendants actions and still yet, turned a blind eye and allowed for these infractions without any effort to correct or enforce New York State Law or its own stipulations. The Plaintiff was denied his constitutional right as specified by the Fourteenth Amendment so that he may be an active and significant part of their children's lives.

(*Id.* at 25-26.)

      With respect to Plaintiff's contention that Defendants violated criminal statutes, he generally asserts that Defendants defrauded him through the use of mail and stole his intellectual property. He more specifically alleges, however, that:

> Faith Miller Scheinkman violated the Hobbs Act whereby the Plaintiff was subjected to extortion to obtain property through wrongful means. The said wrongful means [included] Faith Miller Scheinkman advis[ing] her client to illegally eavesdrop on the Plaintiff in order to advance a conspiracy and file a Temporary Protection Order … [and] advis[ing] her client to file a temporary protection order based on false statements.

(*Id.* at 76.) Although he suggests that Defendants' conduct qualified as illegal activity, his allegations lack any specificity. For example, he alleges that

> Defendants Lighter, Miller Scheinkman, and Jackman committed violations and crimes contravening the Economic Espionage Act of 1996 (18 U.S.C. Sections 1831-1839) and Defend Trade Secrets Act of 2016 by the misappropriation of trade secrets which includes violations of conspiracy to misappropriate trade secrets, the subsequent unlawful acquisition and dissemination of such trade secrets.

(*Id.* at 67.) Even with respect to the specific allegation that Defendants stole his intellectual property, Plaintiff states only in conclusory fashion that they did so:

> Defendants stole and destroyed Corporate information, eavesdropped on Plaintiff, threatened Plaintiff, reduced the Plaintiff's access to healthcare, threatened and destroyed his relationship with his children, ruined him financially, left him without his titled home, destroyed his company and intellectual property pursuits.

(*Id.* at 69.)

As for the individual who allegedly directed the Enterprises, Plaintiff contends that Justice Alan D. Scheinkman, of the Appellate Division, Second Department, who is married to Defendant Scheinkman, acted as the "boss" of the Enterprises and

> any decisions that [were] made against Faith Miller Scheinkman's law firm negatively affect[ed] the Enterprise's boss directly, including those decisions of Judge Lubell who has handled the majority of the Plaintiff's case and complaints against Faith Miller Scheinkman's law firm.

(*Id.* at 13.) In addition to suggesting Justice Scheinkman's alleged role in the conspiracy was motivated by a financial interest, Plaintiff also asserts that Justice Scheinkman's judicial conduct provided a means for the conspiracy to operate:

> [T]he Enterprise hid the communications of adversaries of the Defendant as a means to silence the Plaintiff and possibly similar adversaries to Faith Miller. One mechanism to silence the Plaintiff was a "permission based motion practice" designed by Judge Scheinkman that was published online and was enforced at the convenience of Faith Miller Scheinkman to silence her opponent, the Plaintiff. This mechanism, referred to as "Rule E", hid and obstructed the attempts of the Plaintiff or other adversaries of the Defendants to file grievances with the

4

>government. The Enterprise also had rejected all the Plaintiff's attempts to file a motion. Legal silence in this matter is a rejection of all of the Plaintiff's attempts to file motions and/or other Court proceedings as well as the failure by the Enterprise to record these rejections.

(*Id.* at 20.)

Plaintiff contends that the Enterprises engaged in several "schemes," some of which included: the "Temporary Protection Order Scheme," the "Stealing Corporate secrets Scheme," the "Forensic Psychological Report Interpretation Scheme," the "Silencing the Plaintiff's legal voice [scheme]," the "False Service Scheme," the "Court Scheduling Scheme," the "Forced Response to Motion Scheme," the "Forced Custody Hearing Scheme," the "Scheme to Exclude the Plaintiff while Forcing private meetings with Plaintiff's legal counsels," the "Scheme to use electronic Court systems to misrepresent the Plaintiff to outside parties in terms of legal representation and adequate service," "Off record schemes designed to threaten and coerce the Plaintiff," and "Deadbeat Dad Scheme." (*Id.* at 49-56.)

As far as Defendants' alleged predicate acts, committed in furtherance of the alleged RICO conspiracy, Plaintiff asserts that "the Enterprise … require[d] the Plaintiff to relinquish his passport," "Defendant Miller Scheinkman and her firm willfully obstructed Plaintiff's access to the courts and committed perjury," Defendants "remov[ed] Plaintiff's name from [accounts and] placed [the] accounts in [Lighter's] own name," used "[i]llegal recording devices … to steal information regarding [Plaintiff's] Corporation," and "Defendants intentionally made the false representations in order to induce the Plaintiff to pay additional monies to the Enterprise, to threaten the Plaintiff via the Enterprise and to ultimately cause the Plaintiff to forfeit Corporate property and his individual property." (*Id.* at 63-65.)

Plaintiff seeks money damages and injunctive relief.

## DISCUSSION

The civil provision of RICO, 18 U.S.C. § 1962, "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of section 1962 … may sue … in any appropriate United States district court and shall recover threefold the damages … ." 18 U.S.C. § 1964(c). In order to state a claim under the civil RICO enforcement provision, a plaintiff must allege facts suggesting: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting section 1962(a)-(c)).

To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts suggesting that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also assert that "if the agreed upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45. Where fraud is a predicate act, the heightened pleading standard applies. *See Lundy v. Catholic Health Sys. of Long Island*, 711 F.3d 106, 119 (2d Cir. 2013) ("Plaintiffs must plead the alleged mail fraud with particularity, and establish that the mailings were in furtherance of a fraudulent scheme.").

Further, where a plaintiff "seeks to present and litigate domestic relations issues as federal RICO claims … meeting the … required RICO pleading elements in such a factual

context is quite difficult." *Sheridan v. Mariuz*, No. 07-CV-3313, 2009 WL 920431, at *6 (S.D.N.Y. Apr. 6, 2009) (finding that the plaintiff failed to satisfy the pleading requirements necessary to state a RICO claim and that "his theory of RICO liability [wa]s defective as a matter of law").

Conclusory allegations of a conspiracy that "rest on rank speculation" are insufficient to support a claim under RICO. *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (finding that the plaintiff's "allegations in support of his conspiracy claims … [were] uniformly conclusory, speculative, and implausible … [and therefore were] inadequate to support his conspiracy claims under RICO").

Plaintiff fails to provide any facts that would support any claim under civil RICO – either a claim of a substantive violation or one of conspiracy. Nothing that Plaintiff describes in the complaint could form a predicate act for RICO purposes. The conclusory allegation – that Plaintiff's former wife, her parents, and her lawyers formed an enterprise, controlled by a justice of the Appellate Division, for the purposes of defrauding him and stealing his intellectual property, or conspiring to do so – is not supported by any facts. Because Plaintiff must allege specific facts suggesting that Defendants committed, or conspired to commit, racketeering activity that injured him, and the complaint is devoid of any such facts, the Court concludes that Plaintiff fails to state a claim under RICO.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). While it is likely that the defects in Plaintiff's complaint cannot be cured with an amendment, in an abundance of caution, the Court grants Plaintiff 30 days' leave to file an amended complaint.

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:   November 16, 2021
         New York, New York

                                                  /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  Chief United States District Judge